```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 07-22577-CIV-HUCK
                                    MAGISTRATE JUDGE P.A. WHITE

ARIEL A. HERNANDEZ,               :

        Plaintiff,                 :

v.                                 :        REPORT OF
                                            MAGISTRATE JUDGE
CAPTAIN MERA, ET AL.,              :

        Defendants.                :
_____
```

I. Introduction

This Cause is before the Court upon the plaintiff's First Amended Complaint [DE# 19] and the defendants' Motion to Dismiss the First Amended Complaint. [DE# 20].

The plaintiff, Ariel Hernandez, currently housed at the Miami-Dade County Pretrial Detention Center ("PTDC"), filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for monetary damages and other relief. [DE #1]. The plaintiff has been granted leave to proceed in forma pauperis. [DE# 4].

The plaintiff names the following defendants, all located at the PTDC:

(1)   Captain Mera
(2)   Lt. Junior
(3)   Counselor Johnson
(4)   Counselor Holmes
(5)   Officer Pyles
(6)   Officer Thomas
(7)   Officer Watson

(8)  Sergeant P. Valdez

(9)  Lt. Aladro

(10) Officer C. McBail

The plaintiff raised the following claims.

### Count I

On June 13, 2007 Officers Thomas and McBail ordered the plaintiff to remove his orthopedic shoes, despite the fact that he had jail approval and a state court order permitting him to wear the shoes. Thomas and McBail told him he could not go to the law library with the orthopedic shoes. The plaintiff told them he had a court order to go to the law library three times per week and to use his shoes, and an argument ensued. The plaintiff was issued a disciplinary report, which was never served on him. Two days later a hearing was conducted by Johnson, Holmes and Watson. The plaintiff informed them that he had never received a copy of the charges and he requested staff assistance. Johnson provided the disciplinary report only after he forced the plaintiff to first sign a rights form. The plaintiff alleges that his due process rights were violated when: he was not provided 24 hour prior notice of the charges; he was not provided a copy of the disciplinary report prior to the hearing; he did not receive staff assistance; he was not allowed to present evidence at the hearing; he was coerced into signing a rights form; and he did not receive a copy of the proposed sanctions.

### Count II

The plaintiff alleges that Mera, Valdez and Junior refused to follow the recommended treatment prescribed by the medical

department by not allowing him to have his orthopedic shoes, insisting that he buy shoes available in the commissary. He couches this in terms of medical negligence.

## Count III

The plaintiff states that the defendants have violated PTDC policies and procedures, to wit:

1. Mera has ordered inmates who are being transported to be handcuffed in a manner not consistent with waist chains, which causes pain. The plaintiff alleges that he has "suffered severe pains because of this misused of a waist chain, such as back pains etc." (sic).

2. At times inmates in the special housing unit do not get outdoor recreation. The plaintiff alleges he has not been outside for two weeks.

3. Special housing inmates are not getting access to the law library. The plaintiff alleges that he has missed several court deadlines as a result.

4. Inmates are not provided with a copy of the Department of Correction's standard operating procedures.

5. Special housing inmates do not get psychological evaluations and inmates must wait for a nurse to report medical problems, as there is no procedure for medical emergencies. The plaintiff alleges that he has had to go for three days at a time in pain when no doctor is available to distribute pain medication. He states that he has PTSD and has received no assistance.

6.   The jail does not timely respond to appeals of disciplinary sanctions, and Valdez imposed sanctions upon him without approval.

The Undersigned issued a Report recommending that 1) the claim of denial of orthopedic shoes against the defendants Mera, Valdez and Junior remain pending, in their individual capacities; and 2) all other claims and defendants be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted. [DE# 7].  The Honorable Paul C. Huck issued an Order adopting these recommendations.  [DE# 12].  Mera, Valdez and Junior have been served [DE#'s 13-15], and were granted an extension of time to file an answer to February 19, 2008.  In the interim, the plaintiff filed the First Amended Complaint, and the defendants move to dismiss the entirety of the First Amended Complaint except with regard to the claims against them in Count II. [DE # 20].

The plaintiff seeks to amend by raising the following claims:

<u>Count I</u>

Thomas and McBail ordered the plaintiff to remove his medically prescribed orthopedic shoes and refused to permit him to use the law library unless he removed the shoes, despite a court order permitting him to use the law library three times per week. When the plaintiff refused, he received a disciplinary report, and he was denied due process in the disciplinary proceedings.  Thomas, McBail and Pyles "trumped up [a] bogus charge of a disciplinary violation" in retaliation for the plaintiff writing grievances on policy violations committed by jail staff, including Thomas, McBail and Pyles, and Mera, Junior and Valdez.  The plaintiff states the charge "1-4 verbal disrespect towards officer" is really a charge

of setting a fire.  The plaintiff further states that the original disciplinary committee found him guilty of the charge, but the charge was overturned on appeal.

### Count II

Mera, Junior, Valdez, Thomas, McBail and Pyles refused to comply with a court order and the recommendations of a hospital and the jail's medical staff "which supports the claim of retaliation." He states these defendants refused to permit him to have his orthopedic shoes in retaliation for filing grievances.

### Count III

The plaintiff alleges that Aladro, Mera and Junior modified the use of waist chains so that inmates' arms would be crossed in a manner not intended, and the plaintiff still experiences pain and is waiting to see an orthopedist "to determine how much damage was inflicted and possible methods of treatment."  He further alleges that administrative confinement inmates receive fewer hours of recreation than general population inmates, and are prohibited from participating in any religious programs or church services.

The First Amended Complaint is subject to an initial screening pursuant to 28 U.S.C. §1915.

## II.  Analysis

As amended, 28 U.S.C. §1915 reads in pertinent part as follows:

Sec. 1915 Proceedings in Forma Pauperis

\* \* \*

(e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –

\* \* \*

(B) the action or appeal –

\* \* \*

(i)  is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief from a defendant who is immune from such relief.

The standard for determining whether a complaint states a claim upon which relief may be granted is the same whether under 28 U.S.C. §1915(e)(2)(B) or Fed.R.Civ.P. 12(b)(6) or (c).   See

Mitchell v. Farcass, 112 F.3d 1483, 1490 (11 Cir. 1997)("The language of section 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)").  When reviewing complaints pursuant to 28 U.S.C. §1915(e)(2)(B), the Court must apply the standard of review set forth in Fed.R.Civ.P. 12(b)(6), and the Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  In order to state a claim, a plaintiff must show that conduct under color of state law, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States.  Arrington v. Cobb County, 139 F.3d 865, 872 (11 Cir. 1998).  An action is considered "frivolous" if it is "without arguable merit either in law or fact."  Bilal v. Driver, 251 F.3d 1346, 1349 (11 Cir.), cert. denied, 534 U.S. 1044 (2001).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' Estelle v. Gamble, 429 U.S. 97, 106 (1979) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, the federal rules do require "a short and plain statement" of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  See Fed.R.Civ.P. 8(a); Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11 Cir. 2001), cert. denied, 534 U.S. 1129 (2002).  While notice pleading does not require the complainant to allege a fact to cover every element of a claim, "it is still necessary that a complaint contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory." Id. (quotations and citations omitted). "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11 Cir. 1998).

Counts I and II of the First Amended Complaint now raise a claim that Thomas and McBail (Counts I and II) and Pyles (Count II) along with Mera, Junior and Valdez violated the plaintiff's constitutional rights by interfering with the medical recommendations and state court order permitting him to wear orthopedic shoes. The plaintiff also now claims that all six of these officers acted in retaliation for the grievances the plaintiff had filed against them.

The plaintiff also re-raises allegations concerning the denial of due process in the disciplinary proceedings and claims concerning the denial of recreation and access to medical care in administrative confinement. These claims are duplicative of the claims raised in the Complaint and have been dismissed by this Court.

The plaintiff also re-raises his claims concerning the improper use of restraints, and now alleges more specifically that he suffers pain and possible nerve damage from the use of waist restraints.

The plaintiff also alleges for the first time that detainees in administrative confinement have no access to religious services.

Due Process Claims

The plaintiff raises the same allegations concerning the alleged denial of due process in his disciplinary proceedings. The plaintiff has not raised sufficient facts to state a claim for constitutional relief. Although the plaintiff alleges that he was denied minimum safeguards in his disciplinary proceedings, he has failed to raise sufficient facts to indicate that he suffered any significant hardship in relation to the ordinary incidents of prison life. It is therefore recommended that the claim of denial of due process in the disciplinary process, including the general claim concerning delays in processing appeals, be dismissed pursuant to 28 U.S.C. §1915(e)(2)(b)(ii), for failure to state a claim upon which relief can be granted.[1]

---

[1] In Bell v. Wolfish, 441 U.S. 520, 535 (1979), the Supreme Court held that a pre-trial detainee "may not be punished prior to adjudication of guilt in accordance to due process of law." Under circumstances not involving intended punishment for a legitimate government purpose, a restriction or condition may nonetheless "amount to punishment" if officials are "deliberately indifferent" to a substantial risk to the detainee's safety, for example, an allegation that an official acted recklessly or with deliberate indifference by placing an inmate in a cell with another murderous inmate, or disregarded the a detainee's need for medical care, risk of suicide, or need for food and shelter. See Rapier v. Harris, 172 F.3d 999, 1006-07 (7 Cir. 1999).

Punitive restrictions or conditions may be constitutionally placed on pre-trial detainees, provided that the restrictions further some legitimate governmental objective (such as addressing a specific institutional violation, ensuring a detainee's presence at trial, or maintaining safety, internal order, and security within the institution) and are not excessive in light of the seriousness of the violation. See Rapier at 1003; Collazo-Leon v. United States Bureau of Prisons, 51 F.3d 315, 318 (1 Cir. 1995) (citing Bell at 540)). The plaintiff's claims, as a pre-trial detainee, are analyzed under the Fourteenth Amendment.

The fundamental requirement of due process is the opportunity to be heard, at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545 (1965). In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court established that for loss of a

Claims Concerning Administrative Confinement

The plaintiff's renewed allegation that at times inmates in the special housing unit do not get sufficient outdoor recreation fails to state a claim for relief. He does not allege that he is denied exercise, only that sometimes he cannot have outdoor recreation. The Constitution does not require prison officials to meet a particular recreational standard. Anderson v. Coughlin, 757 F.2d 33 (4 Cir. 1985). While some opportunity for a prisoner to exercise is required, see Ruiz, supra, as with many other areas of prison administration, courts are reluctant to interfere with the sound discretion afforded those officials in making operational

---

liberty interest resulting from prison disciplinary proceedings, the minimum standards of due process require: 1) advance written notice of the violation; 2) a written statement of the fact finders as to the evidence relied upon, and reasons for the disciplinary action taken; and 3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals. Wolff, supra, 418 U.S. at 563-66. Two decades later, in Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court, revisiting this area of the law, held that there are only two circumstances under which a prisoner [who is already deprived of his liberty by virtue of his incarceration] may be further deprived of his liberty so that due process is required: 1) when a change in an inmate's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the Court, Sandin, 515 U.S. at 484; Bass v. Perrin, 170 F.3d 1312, 1318 (11 Cir. 1999); or 2) when a state has consistently given a certain benefit to inmates (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, at 484; Bass, at 1318. In the first situation, the liberty interest exists apart from a state-created right, and the Due Process Clause applies "of its own force." Bass, supra, at 1318, n. 9 (citing Sandin, supra at 484). In the second situation, the liberty interest is created by the state. Bass at 1318.

decisions at the institutional level. <u>Jones v. North Carolina Prisoners' Labor Union</u>, 433 U.S. 119 (1977).

## Medical Claims

The plaintiff seeks to amend to allege that Thomas and McBail (Counts I and II) and Pyles (Count II) along with Mera, Junior and Valdez violated the plaintiff's constitutional rights by interfering with the medical recommendations and state court order permitting him to wear orthopedic shoes. The Eighth Amendment's prohibition on cruel and unusual punishments imposes a duty on prison officials to provide prisoners with "humane conditions of confinement," including adequate medical care. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-34 (1994). Because the plaintiff was a pretrial detainee at the time of the events alleged, his claims arise under the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishment Eighth Amendment standard. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1571-74 (11 Cir.), <u>cert. denied</u>, 475 U.S. 1096 (1986). In any event, the standards are the same. <u>Id.</u>

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. <u>Farrow v. West</u>, 320 F.3d 1235, 1242 (11 Cir. 2003). It is a prison official's deliberate indifference to an inmate's serious medical need that constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To show that a prison official acted with deliberate indifference to his serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. <u>Farrow</u>, 320 F.3d at 1243 (citing <u>Taylor v. Adams</u>, 221 F.3d 1254, 1257 (11 Cir. 2000)). First, the plaintiff must present evidence of an

11

objectively serious medical need which is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Id. In either situation, the medical need must be one that, if left unattended, poses a substantial risk of serious harm. Id. Second, the plaintiff must prove that the prison official acted with an attitude of deliberate indifference to that serious medical need. Id. Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11 Cir. 1999).

Deliberate indifference can be established by evidence that necessary medical treatment has been withheld or delayed for nonmedical or unexplained reasons. Farrow, 320 F.3d at 1247 (finding jury question on issue of deliberate indifference because of unexplained fifteen-month delay in treatment). The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Harris v. Coweta County, 21 F.3d 388, 393-94 (11 Cir. 1994). A plaintiff may also establish deliberate indifference with evidence of treatment "so cursory as to amount to no treatment at all." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11 Cir. 1985). If prison officials delay or deny access to medical care or intentionally interfere with treatment once prescribed, they may violate the Eighth Amendment. Estelle, 429 U.S. at 104.

Not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. Mere inadvertent or negligent failure to provide adequate medical care does not constitute deliberate indifference

and cannot be said to constitute an unnecessary and wanton infliction of pain. McElligott, 182 F.3d at 1254. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. See Estelle, 429 U.S. at 106.

The plaintiff has not raised sufficient factual allegations so that the claim of denial of medical care against the defendants Thomas, McBail and Pyles should proceed. As drafted, the First Amended Complaint does not raise sufficient facts to state a claim that any of these three individuals acted with the requisite deliberate indifference prerequisite to stating a claim of a constitutional violation.

## Retaliation Claims

The plaintiff seeks to amend to claim that Thomas, McBail and Pyles "trumped up [a] bogus charge of a disciplinary violation" in retaliation for the plaintiff writing grievances on policy violations committed by jail staff, including Thomas, McBail and Pyles, and Mera, Junior and Valdez. He further alleges that the refusal of Mera, Junior, Valdez, Thomas, McBail and Pyles to comply with a court order and the recommendations of a hospital and the jail's medical staff constitutes retaliation, as these defendants allegedly refused to permit him to have his orthopedic shoes in retaliation for filing grievances.

Retaliation by prison officials against an inmate for engaging in protected activity is cognizable in a civil rights suit for damages. Wildberger v. Bracknell, 869 F.2d 1467 (11 Cir. 1989). Under certain circumstances, such retaliation may violate both the inmate's right of access to the courts and/or his First Amendment

13

rights. Wright v. Newsome, 795 F.2d 964, 968 (11 Cir. 1986). In the "free world" context, an act taken in retaliation for exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for different reasons, would have been proper. Adams v. James, 797 F.Supp. 940, 948 (M.D. Fla. 1992) (citing Mount Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274, 283 (1977)). A claim of retaliation is a question of causation, and the test applied in the "free world" context is a "but for" analysis. Adams, supra, 797 F.Supp. at 948 ("but for" the retaliatory motive, the incidents to which the plaintiff refers would not have taken place).

In the prison context at least one Circuit has applied the "but for" standard to inmate claims of retaliation. See McDonald v. Hall, 610 F.2d 16, 18 (1 Cir. 1979). The Eleventh Circuit, however, has declined to follow the "but for" analysis in the context of prisoner retaliation suits, "to the extent that the 'but for' test places a greater burden of proof on the inmate." Adams v. Wainwright, 875 F.2d 1536, 1537 (11 Cir. 1989). Instead, the analysis applied in this Circuit to a prisoner retaliation claim requires a "mutual accommodation" between the penal institution's legitimate needs and goals and the prisoner's retained constitutional rights, under the "reasonableness" test set forth in Turner v. Safley, 482 U.S. 78 (1987). Adams v. James, supra, at 948.

Certain means of "retaliation" may be so de minimis as not to inhibit or punish an inmate's rights of free speech. By developing a standard of de minimis actions, courts can screen out frivolous or non-meritorious claims of retaliation during the in forma pauperis complaint review under 28 U.S.C. § 1915. In other words, the plaintiff must demonstrate that he suffered more than a de

minimis inconvenience. American Civil Liberties Union of Maryland v. Wicomico County, 999 F.2d 780, 786 (4 Cir. 1993); see also Bart v. Telford, 677 F.2d 622, 625 (7 Cir. 1982)("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech [is] always actionable. . . .").

The plaintiff has failed to state a cognizable claim of retaliation because he fails to sufficiently identify the protected activity in which he engaged and he has failed to establish an actionable causal connection between the protected activity and the alleged acts by Washington. Although the plaintiff states that he had filed grievances, he does not clearly state when these grievances were filed, against who they were specifically filed and whether each of the defendants has knowledge of the grievances.

### First Amendment Claims

The plaintiff cannot proceed on his claim concerning the denial of religious services because he has not named any individual allegedly responsible for the denial of this right.

The First Amendment, made applicable to the States through the Fourteenth Amendment, also "safeguards the free exercise of [one's] chosen form of religion." Cantwell v. State of Connecticut, 310 U.S. 296, 303 (1940). While prisoners retain First Amendment rights, including the First Amendment right of free exercise of religion, see Cruz v. Beto, supra, prison regulations or policies "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (holding that the Turner v. Safley standard of review is applicable to claims that an inmate's free exercise rights have been violated). O'Lone

15

continued the Court's admonition to give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prisons or jails. 482 U.S. at 350.[2]

## Use of Restraints

The plaintiff has again failed to state a claim for relief as to his contention that Mera has ordered inmates who are being transported to be handcuffed in a manner not consistent with waist

---

[2] In City of Boerne v. Flores, 521 U.S. 507, the Court held that the Religious Freedom Restoration Act, (RFRA), 42 U.S.C. §2000bb, et seq., was unconstitutional as exceeding Congress's authority under the Constitution.  That decision required returning to the standard of review employed in O'Lone v. Shabazz, supra. Subsequently, in September 2000, Congress attempted to reinstate RFRA's protection against government burdens on religious exercise imposed by states and localities by enacting the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc et seq.  This statute mirrored the provisions of RFRA, but its scope was limited to laws and regulations concerning land use and institutionalized persons. See 42 U.S.C. § 2000cc-1(a). RLUIPA's enactment was premised on congressional findings similar to those made for RFRA, namely, that in the absence of federal legislation, prisoners, detainees, and institutionalized mental health patients faced substantial burdens in practicing their religious faiths. See Joint Statement of Senator Hatch and Senator Kennedy, 146 Cong. Rec. S7774-01 (daily ed. July 27, 2000).  In passing RLUIPA, Congress sought to avoid City of Boerne's constitutional barrier by relying on its Spending and Commerce Clause powers, rather than on its remedial powers under section 5 of the Fourteenth Amendment as it had in RFRA. See 42 U.S.C. §2000cc-1(b)(1) (establishing that Section 3 of RLUIPA applies whenever the burden at issue "is imposed in a program or activity that receives Federal financial assistance"); 42 U.S.C. §2000cc- 1(b)(2) (establishing that section 3 of RLUIPA applies in cases in which "the substantial burden [on religion] affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes").

chains. As in the Complaint, the plaintiff does not sufficiently allege that he has suffered any compensable physical injury as a result of the alleged inconsistent use of handcuffs. He claims that he is awaiting an evaluation to determine if he suffered any physical injury.

III. Conclusion

Based on the foregoing, it is recommended that:

1) the Motion to Dismiss the First Amended Complaint [DE# 20] be granted; and

2) the First Amended Complaint [DE# 19] be dismissed without prejudice so the plaintiff may have the opportunity to address the deficiencies noted in this Report.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 4th day of February, 2008.

UNITED STATES MAGISTRATE JUDGE

cc: Ariel Hernandez, Pro Se
No. 040061011
Dade County Jail
1321 N.W. 13th Street
Miami, FL 33125

Cynji Antoinette Lee, Esq.
Miami-Dade County Attorney's Office
P.O. Box 025504
Miami, FL 33102-5504